IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


ANTONIO MARQUIS LATHON                                          PLAINTIFF

                    v.                    Civil No. 06-5133

CORPORAL WASHBOURNE;
SHERIFF TIM HELDER;
OFFICER KERN; OFFICER ROBINSON;
and OFFICER CASINO                                             DEFENDANTS


## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

The plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983.  He proceeds pro se and in forma pauperis.

The events at issue in this lawsuit occurred while the plaintiff was incarcerated at the Washington County Detention Center. Specifically, plaintiff contends excessive force was used against him on November 20, 2005.

Defendants filed a summary judgment motion (Doc. 29).  To assist plaintiff in responding to the motion, a questionnaire was propounded (Doc. 32).

Plaintiff filed a timely response to the questionnaire (Doc. 33).  The summary judgment motion is before the undersigned for issuance of this report and recommendation.

### Background

Lathon was booked into the Washington County Detention Center (WCDC) on November 16, 2005.  *Plaintiff's Response* (Doc. 33)(*hereinafter Resp.*) at ¶ 1.  He had been brought back from the Arkansas Department of Correction (ADC) for court proceedings.  *Id.*

-1-

AO72A
(Rev. 8/82)

He remained incarcerated at the WCDC until December 14, 2005, when he was transferred back to the ADC.  *Id.* at ¶ 67.

He had been at the WCDC on three prior occasions.  *Resp.* at ¶ 2.  His charges included aggravated assault, terroristic threatening, possession of controlled substances, and obstruction of governmental operations.  *Id.* at ¶ 3.

His medical questionnaire completed at the time of intake on November 16th indicated he had no health problems other than the fact that he was allergic to pollen.  *Resp.* at ¶ 4.  On November 17th he requested information regarding who his lawyer was and he stated he needed his motion for discovery.  *Id.*  He asked that his request be faxed to the public defender's office. *Id.*  His request was faxed.  *Id.*

The inmates in all blocks in A pod were agitated on the morning of November 20th because the kitchen was late with breakfast.  *Resp.* at ¶ 12.  Wesley Kern was assigned as a floor officer in A pod.  *Defts' Ex.* 4 at page 1.  He completed the following statement about what occurred on that morning:

> Breakfast trays were really late getting to the pod from the kitchen, so all the detainees in A pod were agitated about getting breakfast late which was also causing them to stay out of their cells longer than usual.  Detainees in S block were more agitated than most.  Detainees in S block were making threats of bodily harm towards officers if they didn't get fed right away.
>
> At approximately 7:30 am I heard a lot of yelling coming from S block where Corporal William Washbourne #459 was passing out medication.  I entered S block so that I could see what was going on.  When I was about to exit the block, Detainee Antonio Lathon said "I wouldn't leave him in here by himself Kern, something might happen."  I asked Detainee Lathon if that was a threat.  Detainee Lathon said "Did that sound like a threat?"  I told Detainee Lathon that it did sound like a threat.  Detainee Lathon said "Yeah, whatever.  F— you ——----------"

I exited the block so that I could assist Deputy Dale Eaton #549 feed breakfast in R block.  When we finished feeding R block, we pulled the tray cart out into the hallway.  When Corporal Washbourne pulled his med cart out of S block he instructed Detainee Antonio Lathon to step out into the hallway.  When Detainee Lathon stepped into the hallway, Corporal Washbourne instructed him to stand against the wall with his hands behind his back.  Detainee Lathon did as he was told.  Corporal Washbourne told Detainee Lathon that since he was making all the threats in the block around everybody else, to do what he was threatening to do now that he wasn't in the block with all his buddies.  Detainee Lathon said "If I would've wanted to beat you're a–, I would've already done it."

I was wanting to finish feeding so that we could move on with our daily activities, so I told Detainee Lathon to go back into the block so we could feed them.  I was watching Detainee Lathon as he was going back into the block since he was already agitated and making threats towards officers.  As Detainee Lathon was walking back into the block, he looked back and kicked Corporal Washbourne in the leg.  When I saw Detainee Lathon kick Corporal Washbourne, I pushed him against the wall in order to restrain him.

When Corporal Washbourne and I took Detainee Lathon to the floor, Deputy Michael Robinson #553 came to assist.  I turned to look at the door to S block to see if it had been secured.  When I turned, I saw that the door was standing open and there were at least two detainees that had come out of S block and were in the hall.  I moved toward the detainees to get them to go back into the block.  One of the detainees went back into the block, but Detainee David Julien was still coming towards where the other officers had Detainee Lathon on the floor.  When I told Detainee Julien to go back in the block, he kept trying to get to the other officers.

When I tried to force Detainee Julien back into S block, he pushed back and wrapped his arms around me in what seemed to be an attempt to tackle me.  I made an attempt to restrain Detainee Julien, but he was pushing and tugging against me and managed to pull free.  When Detainee Julien got away from me, he jumped on the officers that had Detainee Lathon on the floor.  I tried to pull Detainee Julien off of the officers, but he was resisting.  I tried to give Detainee Julien a scapular stun with my knee, and when he raised up slightly I managed to get a hold of his arms and pull him off the people on the floor.  I was trying to restrain Detainee Julien in order to place him in handcuffs, but he was being too combative for me to get him down by myself.

Corporal Washbourne came to assist me.  Deputy Justin Alderson #519, Deputy Travis Nichols #531, and Deputy Joseph Smith #533 were responding to radio traffic and came to assist also.  When I saw the other Deputies coming to assist,

I pulled backwards on Detainee Julien and went to the floor with him.  When I pulled Detainee Julien over backwards, he landed on top of me along with Corporal Washbourne and Deputy Alderson.  I was trying to get Detainee Julien's hand out from under him so that we could place handcuffs on him, but Detainee Julien was resisting my efforts to gain control of his arm.  I applied a mandibular angle pressure point to Detainee Julien and instructed him to give me his arm.  When Detainee Julien stopped resisting, I released the pressure.  Both Detainee Lathon and Detainee Julien were placed in handcuffs and separated for the safety of the officers as well as their own safety.  Corporal Washbourne and I then left the area in order to keep the Detainees calm and de-escalate the situation.

*Defts' Ex.* 4 at page 1.

Lathon denies the detainees in S block were yelling.  *Resp.* at ¶ 13.  Instead, he asserts they were merely asking where their food was.  *Id.*

He also denies making any offensive remarks to Washbourne.  *Resp.* at ¶ 14.  Lathon indicates he made a remark about Washbourne being sent into a "den of wolves" and they started joking back and forth which made Washbourne mad.  *Id.*

Lathon maintains Kern did not enter the block at any point and he maintains he did not speak to Kern.  *Resp.* at ¶ 15, ¶ 16 & ¶ 18.  Lathon agrees that once Washbourne finished distributing medication he called Lathon outside the cell block.  *Id.* at ¶ 19.

When Lathon was outside the cell block, he maintains Washbourne told him he wasn't "so tough out here."  *Resp.* at ¶ 20.  Lathon denies he made any threats towards Washbourne.  *Id.* at ¶ 21.  When Lathon turned to go back into S block, Lathon maintains Washbourne kicked him in the foot.  *Id.* at ¶ 22.  When Lathon turned to ask what Washbourne's problem was, Lathon asserts he was jumped before he got completely turned around.  *Id.*

-4-

According to Lathon, Washbourne grabbed him by the neck and then Kern and Washbourne threw him to the floor. *Resp.* at ¶ 23. Lathon indicates David Julien was pushed into the hallway by other inmates and did not raise a hand to strike anyone. *Id.* at ¶ 24.

Deputy Robinson then restrained Lathon while Washbourne went to assist Kern. *Resp.* at ¶ 25. This was the only physical force used by Robinson against Lathon. *Id.* at ¶ 34. *See also Defts' Ex.* 4 at page 2.

On November 20th at 8:30 a.m., Lathon submitted a grievance stating that Washbourne called Lathon out of his pod and asked if he had said he was going to kick his a–. *Resp.* at ¶ 6. *See also Defts' Ex.* 3 at page 4. Lathon replied: "No." *Resp.* at ¶6. Lathon indicated Washbourne then tried to goad Lathon into hitting him. *Id.*

When Lathon did not hit Washbourne, he asserts Washbourne said he would choke his a–. *Resp.* at ¶ 7. Lathon indicated he replied: "So choke me." *Id.*

Lathon stated Washbourne then told Lathon to go back into his pod. *Resp.* at ¶ 8. As Lathon was walking back into the pod, Lathon stated Washbourne kicked him in the back of his foot. *Id.* Lathon stated he tried to get Washbourne's foot off of him and Washbourne then jumped Lathon and proceeded to choke him. *Id.* At this point, Lathon indicated he was jumped on by four officers and kicked and punched. *Id.*

After the incident, Lathon maintains his back and neck were hurting and he had a wound on his leg that was bleeding. *Resp.* at ¶ 9 & ¶ 11. Lathon also stated Washbourne kicked him in the testicles. *Id.*

On November 21st, Lathon submitted a grievance complaining that his neck and back were hurting and his leg was bleeding but he was never seen. *Resp.* at ¶ 46. He said it didn't pay

-5-

to see the nurses because they did not do their job. *Id.* He asked what happened to the officers that brutalized Julien and him. *Id.*

In response, Lathon was told that he would see the doctor on November 22nd and would be given over-the-counter medication to help him feel better until then. *Resp.* at ¶ 47. He was also told the nurse would be talked to as soon as she came in. *Id.* Lathon indicates he never saw the nurse. *Id*.

On November 21st, Lathon complained that his grievance had not been answered. *Resp.* at ¶ 48. He stated officers had not sent his grievances back from the day before although other inmates had received responses to their grievances. *Id.*

In response, Lathon was told that this would be checked into. *Resp.* at ¶ 49. He was also told that he was spoken to in person about one grievance but would also receive a written response. *Id.*

Lathon was seen by Dr. Howard on November 22nd. *Defts' Ex.* 2 at page 2. He noted Lathon was hurting in the back, wrist, and face and had been in a fight. *Id.* Dr. Howard prescribed Aleve, twice a day, as needed, for a week. *Id.*

Lathon received the Aleve. *Resp.* at ¶ 53. Lathon received no further medical treatment for the injuries he received on November 20th. *Id.* at ¶ 54.

On November 22nd, Lathon submitted a grievance stating he wanted to press charges against Washbourne and Kern. *Resp.* at ¶ 50. He indicated Kern was suspended and he wanted to know why Washbourne was still working. *Id.* He stated his wrist and face were still hurting and the doctor was only giving him Aleve. *Id.*

-6-

In response, Lathon was told the matter was being looked into. *Resp.* at ¶ 51. With respect to medication, he was told that they had no control over what the doctor gave him. *Id.*

On November 27th, Lathon submitted a grievance stating that Kern was not supposed to be working around him and Julien while Kern and Washbourne were supposedly being investigated. *Resp.* at ¶ 57. However, Lathon said Kern was working in the pod. *Id.* In response, Lathon was told that unless he had a new problem with Kern he was allowed to perform his appointed duties in A pod on the floor. *Id.* at ¶ 58.

Lathon was asked to describe in detail the amount of physical force used by each defendant. He replied: Washbourne choked and kicked me; Kern kicked me when I was on the ground and not resisting; Robinson was holding me down; Casino helped with restraining; and Helder was not around. *Resp.* at ¶ 10.

Washbourne suffered minor injuries to his right knee and was treated at Mediserve. *Defts' Ex.* 4 at page 5. He was to stay on light duty for several days. *Id.*

Sgt. Alan Johnson, of the Office of Professional Conduct, conducted an internal affairs investigation of the incident as a result of a complaint by Julien. *Resp.* at ¶ 37. Lathon was interviewed by Johnson. *Id.* at ¶ 38.

Lathon told Johnson that everyone was mad about breakfast being late and that he had told Washbourne that they sent him in amongst all the wolves. *Resp.* at ¶ 39.

Lathon indicated Washbourne called him out in the hall and asked if he had said he was going to kick his a–. *Resp.* at ¶ 40. Lathon denied saying that. *Id.* Lathon indicated he and Washbourne had some words back and forth. *Id.*

AO72A
(Rev. 8/82)

Lathon indicated that Washbourne acted like he was trying to provoke Lathon and threatened to choke him. *Resp.* at ¶ 41. When Washbourne told Lathon to go back in the barracks, Lathon indicated he turned to go and then Washbourne kicked him on the back of his leg or kind of stepped down on his foot. *Id.* He stated that he kicked his leg back to get Washbourne's foot off of him. *Id.*

Lathon indicated Washbourne started choking him and then all the other officers jumped on him. *Resp.* at ¶ 42. At this point, somebody pushed Julien out into the hall. *Id.*

Johnson noted that Lathon did not sustain any significant injuries. *Defts' Ex.* 4 at page 12. Lathon disagrees with this assessment noting that he had a bleeding leg and swollen testicles that he had not been treated for. *Resp.* at ¶ 43.

Washbourne was found to have engaged in officer misconduct by having used profane language towards Lathon. *Defts' Ex.* 4 at pages 20-21. Washbourne was not found to have used excessive physical force towards Lathon. *Id.*

Lathon indicates the leg wound healed in about a week. *Resp.* at ¶ 11. He asserts it took about two weeks for the swelling in his testicles to go down. *Id.* Finally, Lathon indicates his back still hurts as a result of the incident. *Id.*

Lathon states that he went to the doctor once he was back at the penitentiary but never received any treatment. *Resp.* at ¶ 11. Lathon's ADC medical records do not indicate any serious back or neck problems. *Resp.* at ¶ 70; *Defts' Ex.* 5. The only time Lathon sought medical treatment for back and neck problems was on December 18, 2005. *Resp.* at ¶ 71; *Defts' Ex.* 5 at page 21. Lathon indicates they would only see him once. *Resp.* at ¶ 71.

AO72A
(Rev. 8/82)

## Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## Discussion

Defendants have now moved for summary judgment. First, defendants assert they have been sued in their official capacities only. As plaintiff cannot show that the policy or custom of Washington County caused the alleged use of excessive force, they contend they are entitled to judgment as a matter of law. Defendants point out an investigation was undertaken when allegations surrounding this incident arose and defendants were found to have followed the use of force policy. Second, defendants contend the use of force was objectively reasonable and not

-9-

excessive.  Finally, defendants contend the injury Lathon suffered was *de minimis* at most and insufficient to satisfy either the Eighth Amendment or the physical injury requirement of 42 U.S.C. § 1997e(e).

### Official and Individual Capacity Claims

We reject defendants' argument that they are sued in their official capacities only.  In this case, defendants were placed on notice that they were being sued in both their official and individual capacities.  *See e.g., Andrus v. Arkansas*, 197 F.3d 953 (8th Cir. 1999)(In actions against officers specific pleading of individual capacity is required to put public officials on notice they will be exposed to personal liability).  The complaint in this case is a form complaint that contains boxes for the plaintiff to check if he is suing the defendants in their official capacities only, their personal capacities only, or in both their official and personal capacities. *Complaint* at page 2.  Lathon checked the third box next to both official and personal capacities.

### Excessive Force

"The Eighth Amendment protects inmates from the unnecessary and wanton infliction of pain by correctional officers regardless of whether an inmate suffers serious injury as a result." *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002)(citations omitted).  The Supreme Court has held that when "prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992).

"Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the 'core judicial inquiry' is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jones*

-10-

*v. Shields*, 207 F.3d 491, 495 (8th Cir. 2000) (*quoting Hudson*, 503 U.S. at 6-7).   To make this

determination, the court is to consider, among other things, the following factors: "the need for

the application of physical force; the relationship between the need for physical force and the

amount of force applied; and the extent of injury suffered by the inmate." *Jones*, 207 F.3d at 495

(citations omitted).

        In this case, Lathon, Washbourne and Kern give contradictory versions of what happened

on November 20th.  Washbourne and Kern indicate Lathon had been uttering offensive remarks

and making verbal threats toward Washbourne, was pulled out into the hallway and when he was

told to return to S block, kicked Washbourne.  *Defts' Ex.* at pages 1-2.  At this point, Kern and

Washbourne indicate they took Lathon to the floor to restrain him.  *Id.*

        In contrast, Lathon contends he made no threats towards Washbourne.  *Resp.* at ¶ 14 & ¶

21.  Instead, he states he merely remarked that Washbourne had been fed to the wolves.  *Id.* at ¶

14.

        When Lathon was called out of the pod by Washbourne, Lathon maintains Washbourne

was attempting to goad him into kicking Washbourne.  *Resp.* at ¶ 6.  When Lathon was told to

return to the pod, he maintains Washbourne kicked him on the back of his foot.  *Id.*  When Lathon

tried to get Washbourne's foot off, Lathon maintains Washbourne jumped him and started to choke

him.  *Id.*  Lathon contends he was kicked and punched by Washbourne and Kern.  *Resp.* at ¶ 8, ¶

9, ¶ 10, ¶ 31.

        We find there are genuine issues of material fact as to whether Washbourne and Kern used

excessive force against Lathon. The court cannot at the summary judgment stage merely choose

-11-

to believe the defendants' version of the events of November 20th and disbelieve Lathon's version of the events.

　　　We also believe Lathon has sufficiently alleged the existence of an injury to withstand summary judgment.  It has been said that "[n]ot every malevolent touch by a prison guard gives rise to a federal cause of action" because the "prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Id.* (citations and internal quotation marks omitted).  While "[s]erious or permanent injury is not required to make out an Eighth Amendment claim, [s]ome actual injury must be shown."  *Id.* (citations omitted).  Additionally, the court considers "the extent of the pain inflicted in order to determine whether a constitutional deprivation has occurred."  *Id.* (citations omitted).

　　　Lathon has alleged he had a bleeding leg, swollen testicles, and his back and neck were injured.  We believe the injuries alleged are sufficient under the Eighth Amendment.  *See e.g., United States v. Miller*, 477 F.3d 644, 647 (8th Cir. 2007)(injuries consisting of a bruised and swollen left eye and reddish-purpose face sufficient to allow a jury to reasonably determine officers use of force violated the Eighth Amendment); *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006)(The Eighth Amendment bars correctional officers from imposing unnecessary and wanton pain on inmates, regardless of whether there is evidence of any significant injury."); *Howard v. Barnett*, 21 F.3d 868, 872 (8th Cir. 1994)(concluding that the Eighth Amendment proscribes the use of excessive force against prisoners, even if the resulting injury is not of great significance).

-12-

The Prison Litigation Reform Act (PLRA), also contains a physical injury requirement. Codified as 42 U.S.C. § 1997e(e), section 803(d) of the Prison Litigation Reform Act of 1996 (PLRA) provides as follows:  "No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

This provision applies to all federal actions brought by prisoners.  *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004).  We believe the injuries alleged are sufficient to meet the physical injury requirement of § 1997e(e).  *See e.g., Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997)(§ 1997e(e)'s physical injury requirement is coextensive with the Eighth Amendment's physical injury test).

We do, however, believe Robinson is entitled to summary judgment.  The only physical force he used was to restrain Lathon while he was on the floor.  *Resp.* at ¶ 34.  Lathon concedes Robinson did not use excessive physical force against him.  *Id.* at ¶ 35.

Similarly, we believe Casino is entitled to summary judgment.  Lathon was asked to describe in detail the amount of physical force Casino used.  Lathon merely responded that Casino helped with restraining him.  *Resp.* at ¶ 10.

We also believe Sheriff Helder is entitled to summary judgment.  A supervisor may not be held liable for a section 1983 violation on the basis of *respondeat superior*.  *See Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).   Lathon does not contend Sheriff Helder directly participated in the alleged constitutional violations or that a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights.  *Resp.* at ¶ 10.  *See  Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir.1996)

-13-

(*citing Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 806 (8th Cir.1994));  *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility).  Further, the record in this case is devoid of any suggestion of the existence of a custom or policy on which to hold Washington County liable.  In short, there is nothing to suggest Lathon's alleged constitutional deprivation was caused by a custom or policy of Washington County.

## Conclusion

For the reasons stated, I recommend that the defendants' motion for summary judgment (Doc. 29) be granted in part and denied in part.  Specifically, I recommend that the motion be granted with respect to Officer Robinson, Officer Casino, and Sheriff Tim Helder.  I recommend that the motion be denied with respect to Corporal Washbourne and Officer Kern.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 24th day of August 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

-14-