IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ANTONIO MARQUIS LATHON                                                                        PLAINTIFF

v.                                              Civil No.  06-5133

CORPORAL WASHBOURN                                                                            DEFENDANT

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

The Plaintiff, Antonio Lathon, (hereinafter "Plaintiff") filed this civil rights action pursuant to 42 U.S.C. § 1983.  He proceeds *pro se* and *in forma pauperis*.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2005), the Honorable Jimm Larry Hendren, Chief United States District Judge for the Western District of Arkansas, referred this case to the undersigned for the purpose of making a report and recommendation.

This Court entered a Report and Recommendation (Doc. 29) that Plaintiff's claims against originally-named Defendants Robinson, Casino, and Helder be dismissed.  This Report and Recommendation was adopted by the District Judge on September 13, 2007.  (Doc. 36). Subsequently, a second Report and Recommendation was entered by this Court on September 28, 2007, recommending that Plaintiff's claims against Defendant Kern also be dismissed.  (Doc. 39). This second Report and Recommendation was adopted by the District Judge on November 7, 2007. (Doc. 40).  An evidentiary hearing was conducted on April 29, 2008 regarding Plaintiff's remaining claim of excessive force against Defendant Washbourn.

**1. Background & Evidence Presented**

At the evidentiary hearing, I heard the testimony of the following witnesses in the following order: (1) Randy Tabor (2) Phillip Steed; (3) Raymond Moss; (4) Jeff Black ; (5) Jeffery Workman; (6) Antonio Lathon, Plaintiff; (7) William Washbourn; and (8) Michael Robinson. For purposes of discussion, I will summarize in the first person the testimony given at the evidentiary hearing.

*Randy Tabor*

My name is Randy Tabor.

A little over two years ago, I was locked up with Plaintiff.

I don't remember the incident between Plaintiff and Defendant. However, after reviewing the statement I made at the time, I do remember some things about that incident.

Chow was late, and the inmates were irritated. There was a "ruckus" in the hallway. I didn't see much because the doors were closed and only have small windows. All of the inmates were trying to see what was going on.

I don't know who swung first or who got hit, I don't even remember if Washbourn was in the hallway.

I do not remember seeing Plaintiff when he came back to the cell block.

*Phillip Steed*

I remember seeing Plaintiff in the Washington County Jail.

I assume I gave a statement about the incident, I remember a report of an incident involving the Defendant.

I remember writing a report, and reviewing the report does refresh my recollection on some events.

On the date in question, the inmates were not fed breakfast at a specific time.  The guards did not make rounds for two hours.

I don't remember the incident between Plaintiff and Defendant.

I do remember Defendant.  He was a nice guy.

### *Raymond Moss*

I can not recall the incident with Plaintiff and Defendant.

I wrote several incident statements while in Washington County Jail, and this appears to be my handwriting on a report about the incident in question.  It does not refresh my memory.

Defendant looks familiar, but I can't remember any fighting.

### *Jeff Black*

I am employed by the Washington County Sheriff's Office.  I was employed there in 2005 on the date in question as a detention officer.

I know Plaintiff and Defendant and remember the incident on November 20, 2005.

Defendant was giving out medication and pulled the Plaintiff into the hallway to discuss some actions that had taken place in the cell block that I did not see.

Both Kern and Defendant took Plaintiff to the floor.  I could not see much, such as the alleged kick to Plaintiff's leg by the Defendant.

My vantage point was from A-pod Control, about 15 feet above where the incident took place.

Plaintiff spun around when walking back to cell block and Washbourn and Kern took him to the ground.  If I encountered an inmate that spun as Plaintiff did, I would take him to the ground.  There was nothing inappropriate I could see in the way Plaintiff was placed on the ground.

Plaintiff was not on the ground long when another inmate jumped on Kern's back. When the inmate jumped on Kern's back, there was a struggle to handcuff the inmate. Robinson then escorted Plaintiff back to his cell. After he was handcuffed, I didn't see him.

I saw no blood or visible injuries.

Plaintiff and Defendant were arguing in the hall and Plaintiff was facing the Defendant about 8-10 inches off the wall when the altercation began. Pulling an inmate out into the hallway to confront him/her is not unusual.

Defendant may have cursed at Plaintiff, I don't remember. The door to the cell was open when Plaintiff spun around. I don't know what prompted Plaintiff to spin, I think Defendant stepped on his shoe. When Plaintiff turned it was an aggressive move, demonstrating that he wanted confrontation.

I did not hear Defendant say he would choke Plaintiff or see Plaintiff kick or strike or any kick or strike to Plaintiff's groin area by an officer. I could really only see knee-level and above.

Usually an inmate would be placed in lockdown, but Plaintiff was going to be taken back to his cell until the issue with chow was resolved.

### *Jeffery Workman*

I can't recall the incident, but reviewing my statement from the time refreshes my memory.

I remember an argument. I think Plaintiff had his foot stepped on and was pushed.

I was not able to see much, I could see through a crack.

Plaintiff was standing in the middle of the hallway. I can't identify officer Washbourn as being there. There was another inmate out in the hallway at the time of the incident.

*Antonio Lathon*

I was threatened by Defendant that he would choke me. Defendant also kicked me in the back of the leg to provoke a response. Three to four officers jumped on me and someone kicked me.

I was less than a foot from the door when the confrontation began. I didn't know another inmate had come out, but I did see him being restrained.

Defendant cursed at me in the hallway. I was told to go back to the pod.

Kern was on my left. I pivoted right to go to my cell. I was walking back into my cell, right at the door when I was kicked and spun around. I turned left, but not quickly.

I suffered blows to my groin while on the ground or while being taken to the ground.

I did not see who kicked me.

The nurse did not see me for 3-4 days and I only got pills.

My only injury is the one to my groin, it was swollen, but there was no blood in my urine.

I never saw a doctor for these injuries.

I didn't see Defendant step on my leg, but I know it was him because he was directly behind me.

*William Washbourn*

I was employed at the Washington County Detention Center as an officer on November 20, 2005.

I handed out the morning medications on that date, the inmates were yelling because breakfast had been delayed. Plaintiff was making many remarks. Kern came to assist me and Plaintiff told him not to leave me in there alone, he appeared to be making a threat.

I then called Plaintiff out to hallway. Kern said to put Plaintiff back in pod and deal with him after breakfast was served.

I don't remember stepping on Plaintiff's foot. He spun around, and we took him down. Robinson escorted him out of the hallway.

I called Plaintiff into the hallway to speak to him away from the other inmates, which usually causes a change in attitude. I find it is an effective way to calm down an inmate.

I sought medical attention for injuries sustained when taking Plaintiff to the ground.

I had limitations due to a knee injury sustained during this incident.

I don't remember threatening to choke Plaintiff.

Deputy Kern saw Plaintiff spin and he was the one who initially took Plaintiff to the ground. Plaintiff swung his right foot and hit me in the knee, causing my injury. As soon as he kicked, he was taken to the floor. Plaintiff was walking into the block, and was almost to the doorway when he spun. I was behind him because I had to go into the cell to close the door.

Plaintiff spun clockwise, to the right. Kern was standing to Plaintiff's left, I was behind Plaintiff. I saw him from the corner of my eye, but Kern grabbed him before I could react. I was looking at Robinson when Plaintiff spun.

There was no striking of the Plaintiff, he was commanded to go to the ground and did so voluntarily. I was in the midst of handcuffing Plaintiff when the other inmate jumped on Kern.

I don't remember striking Plaintiff in the groin.

We did administer strikes to the other inmate, but not Plaintiff.

*Michael Robinson*

I am employed by Washington County Sheriff's Department as a transport officer. In November of 2005 I was a detention officer.

On November 20, 2005, I came from booking into A-pod. Defendant was talking to Plaintiff when I arrived. I heard struggle, and they fell into me as they were taking Plaintiff to the floor. I observed nothing before this.

Plaintiff was secured in handcuffs, and then another inmate jumped on Kern's back. I took Plaintiff from the area and the Defendant assisted Kern with the other inmate.

I asked Plaintiff if he was hurt, he told me no. Plaintiff had no visible injuries.

## 2. Discussion

Plaintiff contends his constitutional rights were violated when excessive force was used against him on November 20, 2005. On this date, Plaintiff was a pretrial detainee. The courts generally analyze excessive force claims of arrestees and pretrial detainees in the same manner. *See Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001) ("The evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard."). The use of force must be necessary to some legitimate institutional interest such as safety, security, or efficiency, and the force used must not be in excess of that reasonably believed necessary to achieve those goals. *See Schoemehl*, 878 F.2d at 1048. The relevant inquiry being whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them. *See e.g., Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996).

In this case, Plaintiff claims he was kicked in the leg or that his foot was stepped on, and that when he turned around to confront the Defendant about it, he was taken to the ground where he was kicked in the groin.

No witness saw a kick or punch to Plaintiff's groin. In fact, Plaintiff testified he did not see who it was that injured him. Plaintiff further testified that when he did spin around he was angry and confrontational. Jeff Black, who is the most independent of the witnesses, said Plaintiff was confrontational and that he would have handled the situation similarly to Defendant. While Black testified he thought Defendant stepped on Plaintiff's shoe, there was no testimony to establish that such an action was intentional or done with the purpose of provoking Plaintiff. Certainly, there is not enough evidence to show by a preponderance of the evidence that any actions that could be attributable to the Defendant were intentional or intended to provoke Plaintiff.

The credible testimony established that Plaintiff was confrontational when he spun around, and that Defendant was justified in taking him down to the ground. There was no testimony that the force used to take the Plaintiff to the ground was excessive beyond what was reasonable and necessary to control the situation. Additionally, there was no testimony attributing any injuries Plaintiff alleged to have suffered to the Defendant.

At the hearing, Plaintiff also complained that he did not see the nurse for 3-4 days after the incident. However, the credible testimony at the hearing was that Plaintiff had no visible injuries and stated he was not harmed. Records also show he saw the nurse on November 22, 2005, two days after the incident. (Doc. 30, Ex. 3). As such, any claim for denial of medical treatment would fail to meet the "deliberate indifference" standard. *Estelle v. Gamble,* 429 U.S. 97, 103 (1976) ( holding deliberate indifference to inmate's serious medical needs constitutes cruel and unusual punishment).

Additionally, to the extent Plaintiff complained he only received pain relievers for his injuries, this complaint is at most a disagreement with treatment and does not rise to the level of a constitutional violation.  *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir.2000) (mere disagreement with the course of medical treatment is insufficient to state Eighth Amendment claim).  Moreover, Plaintiff did not present any evidence he suffered harm from any delay in treatment.  *Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1188 (11th Cir. 1994) ("An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.").  Finally, there was no evidence presented that Defendant Washbourn made any medical decisions regarding care for Plaintiff.  *See Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment).

### 3. Conclusion

For the reasons stated, I  recommend that judgment be entered in the Defendant's favor and the complaint (Doc.  1)  be dismissed with prejudice.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 15th day of May 2008.**

/s/ *J.  Marschewski*
HON.  JAMES R.  MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE